In this case, the call for oral argument is Derada v. Eli Lilly & Company Do you mind if my client stands with me? That's fine. Any objection? I'm sorry, I couldn't say. No, I'm fine. Yeah, why don't you move on to the other side. Okay, thank you. Okay, counsel? Alright, thank you, Your Honor. May it please the court, my name is Susan Andorfer and I represent the plaintiff, Sherri Terada, in this matter and she stands here with me today. This case was originally filed in St. Clair County. Upon defendant's motion to transfer for improper venue, the circuit court transferred it to Jackson County and this court granted our petition for leave to appeal in this matter. The plaintiff was an employee of defendant Eli Lilly for 11 years until she was terminated December 15, 2011. She was a sales representative selling diabetic medications to doctors. Her sales territory included St. Clair County as well as a few other southwestern Illinois counties. Plaintiff's complaint alleges that Eli Lilly discriminated against her. It also alleges that Eli Lilly retaliated against her for making complaints of discrimination. It further alleges that Eli Lilly retaliated against her for assisting a former employee who was considering a possible discrimination lawsuit against Eli Lilly. Plaintiff's complaint further alleges that she was retaliated against for whistleblowing. And then one count of plaintiff's five-count complaint is against defendant Lori Trenacoste for defamatory statements that she made about plaintiff to Eli Lilly. Section 2-101 of the Code of Civil Procedure, the venue statute, says that a lawsuit must be commenced either in the county of residence of any of the defendants or in the county in which the transaction or some part thereof occurred out of which the cause of action arose. With respect to the transaction problem of the venue statute, this appellate court, in the case of Boxdorfer v. Daimler-Chrysler, held that two variables must be analyzed. Number one, the place where the cause of action springs into existence, and number two, the nature of the cause of action. Under Boxdorfer, the place where a cause of action springs into existence includes the place where, quote, any significant negotiations were carried on between the parties or where an agreement was signed or the place where it was or was supposed to be performed or where matters occurred that plaintiff has the burden of proving. In this case, St. Clair County was, first of all, the place where plaintiff's employment was to be and was performed. Number two, it was the place where negotiations were carried on between the parties regarding plaintiff's work performance. And three, it was the place where matters occurred that plaintiff has the burden of proving in this particular case. What about the allegations in this that Carbondale and Murfreesboro were the sites of these actions? Well, that was only with regard to some of the defamatory statements were made there. That doesn't mean that the issue in this case is whether St. Clair County is improper, not whether some other county may have some other actions may have occurred in another county. I realize that. But there were the specific pinpoints of actions in these two municipalities in Jackson County. That's why I asked. You're not allowed to speak. You're represented by counsel. Your counsel is doing a good job. Just let her do her job. Your Honor, as to Jackson County, the defendant, Trina Crosty, is alleging that the defamatory or the statements that she made occurred in Jackson County. That does not, and I'm not going to deny it, that Jackson County was one part of plaintiff's territory. But the question is whether there are acts sufficient to make St. Clair County a proper venue in this case. This isn't a Form 9 convenience case. And my argument is that there are many other facts that occurred in this case that make St. Clair County an appropriate forum. And just because something happened in another county doesn't necessarily make St. Clair County an improper forum. You're alleging that one of your causes of action is for discrimination. And acts of discrimination occurred in St. Clair County. Correct. And does the record reflect that and how does it? Is it through affidavits or depositions? Sure. There's an affidavit. My client filed an affidavit alleging that certain acts occurred, certain discriminatory acts occurred against her in St. Clair County. One of the things she has to prove for a discrimination claim is that one of the prime efficient elements is that similarly situated employees who are not in her protected class, in this case age, nationality, sexual orientation, were treated differently. One of those comparable people is a woman by the name of Kelly Gettin whose territory also included St. Clair County. And that is in her plaintiff's affidavit that was attached to her motion. In addition, plaintiff another element of plaintiff's discrimination claim that she'll have to show is that her job performance was satisfactory and one of the allegations that she put in her affidavit was that her supervisor followed her on sales calls in St. Clair County to judge her performance. Your argument is you filed alternative causes of action and you chose your forum to be St. Clair County. Correct. And if any part of the transaction which formed any one of those causes of action occurred in St. Clair County then you meet the test under the transactional prong. Correct. That's correct. And in fact there's a case the also case that I cited in my brief addresses had a similar sort of situation. In that particular case there were several defendants and the defendant was Sycamore Municipal Hospital and it was named on two of the five counts. And Sycamore filed, the case was I believe filed in Cook County. Sycamore was trying to get it transferred over to DeKalb County. I think that's where it was. And DeKalb, Sycamore Hospital actually acknowledged that as to the other defendants for counts one through three Cook County was proper. Sycamore came into the court and tried to move to transfer Venue saying the two counts that were against it should be, were not proper in Cook County. Venue was not proper and so the whole case should be transferred over to DeKalb County. And the circuit court and the appellate court disagreed and said no you can't do that. You can't do it that way. That it's enough that the parts of the case that were proper in Cook County means the whole thing stays in Cook County. So I think the Alstead case addresses that type of issue. Just to make a point you're not saying that Venue would be improper in Jackson County. It's one of the counties where Venue would be proper. That would be your argument, right? That would be my argument. That's correct. And you get to choose your Venue. Correct. As I indicated when I was talking about the discrimination issue, Plaintiff has to prove four different things to prove a prima facie case of discrimination. One is that she was in a protected class. The second was that she was performing her job satisfactorily. The third is that she was fired. So it's only one of four elements. And the fourth is that her employer treated similarly situated employees outside of her class more favorably. And then in the retaliation portion of her case, Plaintiff has to prove three things. First of all, that she engaged in protected activities. So either that she complained of discrimination or that she engaged in an act of actual whistleblowing. Secondly, that she was fired. And then third, that there's a causal nexus between her act of her complaining of discrimination or whistleblowing and her firing. And then as I've indicated, Plaintiff filed an affidavit regarding some of these factual issues. Some of the facts that occurred in St. Clair County that are pertinent to proving some of the elements I just mentioned are, first of all, that she actually worked in St. Clair County and that she was meeting her employer's legitimate business expectations. One element of her discrimination claim would involve her work performance in St. Clair County. Plaintiff and her supervisor were actually physically in St. Clair County when Plaintiff was interviewed during an investigation of her work conduct by her supervisor and defendant's human resources consultant. And this investigation not only relates to Plaintiff's work performance, which is an element of her discrimination claim, but also to Plaintiff's claim that defendant was retaliating against her for conducting this investigation. And again, that was in Plaintiff's affidavit attached for motion. Third, Plaintiff was in St. Clair County when she was told by defendant not to talk to a co-worker about that co-worker's own possible discrimination suit against defendant. And this relates to Plaintiff's claim that she was retaliated for assisting a co-worker who was contemplating a discrimination action. Fourth, Plaintiff was treated differently than other co-workers outside of her protected class groups by her supervisor in St. Clair County. And as I indicated earlier, one of these co-workers, whose name is Kelly Gettin, was working in St. Clair County as well. And that is part of Plaintiff's discrimination claim. Fifth, while she was physically located in St. Clair County, Plaintiff reported to defendant's human resources consultant and her supervisor that defendant's salespersons were engaging in certain improper conduct. And this is an element of Plaintiff's whistleblower claim, that she was engaging in protected activity by reporting this improper conduct. Sixth, some of the improper conduct by liability, and which forms the basis of her whistleblower claim, also took place in St. Clair County. Again, that's in Plaintiff's affidavit. The improper conduct involved defendant's salespersons' interactions with the doctors and healthcare providers in St. Clair County. And then finally, as a result of the discrimination and retaliation, Plaintiff was discharged from employment, thus preventing her from working in St. Clair County. The circuit court misapplied Boxdorfer in this case by focusing only on where the termination took place, and ignoring these other elements of Plaintiff's case. As Boxdorfer held, the place where a cause of action springs into existence includes where matters occur that Plaintiff has the burden of proving, not just her termination. Defendants do not deny that any of the foregoing actions actually took place in St. Clair County, and they cannot and do not claim that nothing occurred in St. Clair County. Courts, including this court in the Kaiser v. Dahl-Pollard case, have held that the phrase, transaction or some part thereof, in the venue statute is to be interpreted broadly. That phrase, transaction or some part thereof, under the Kaiser case, includes all the facts that the Plaintiff has the burden of proving. The Kaiser court noted that, quote, transactional venue is meant to be a broad, flexible doctrine, unquote. It was not, however, applied that way by the circuit court in this case. In the Kaiser case, the appellate court affirmed the trial court's denial of defendant's motion to transfer venue from St. Clair County to Clinton County. In that medical malpractice case, although Plaintiff was diagnosed and treated in St. Clair County, she did not allege that any of her negligent care took place in St. Clair County. Rather, all of the allegations of negligence concerned care that she received in Clinton County, and defendants argued that since none of the negligence occurred in St. Clair County, venue was not proper there. This court disagreed, holding, quote, whereas here Plaintiff alleges that injuries have been incurred in multiple cases, venue may be proper in meaning for all of them. With the exception of where the termination itself took place, defendants ignored what facts Plaintiff must prove to support the elements of her claims. Instead, the defendants focused on the defenses of this case. For example, defendants argued that defendant Tranecasty made statements against Plaintiff to Eli Lilly through a hotline, and then Eli Lilly performed an investigation of Plaintiff's conduct, and as a result of that, and as a result of Tranecasty's statements, fired Plaintiff as a consequence of that investigation. Defendants also state that a telephone conference call between Plaintiff, Plaintiff's supervisor, and Eli Lilly's human resources consultant, in which Plaintiff and her supervisor were physically present in St. Clair County, did not result in Plaintiff's termination or the investigation that led to Plaintiff's termination. But all of those allegations and facts alleged by the defendant are their defense as to why Plaintiff was terminated. Their defendant's opinion, based on its defense, that they terminated Plaintiff for a non-retaliatory and non-discriminatory reason. Plaintiff's facts and allegations that form the basis of her amended complaint are entirely different, which is not surprising. But the facts of defendant's defense are not relevant as to whether venue is improper. Plaintiff can only choose a forum for venue based on the facts and the elements of the causes of action that she has to prove. Defendants ignore Plaintiff's allegation that her termination was not due to an investigation of her conduct, but rather because of discrimination and retaliation. As in any employment termination case, the parties have fundamental differences about why Plaintiff was to base the determination of improper venue are those that the Plaintiff has to prove, not those that the defendant will argue in its defense in the case. Now, Boxhorfer also held that a court must consider the nature of the cause of action as well. And the Circuit Court, in this case, ignored that factor. This is an employment case, as I've said, where the Plaintiff worked for defendant in St. Clair County. To hold that a county in which the Plaintiff worked for the defendant is not the proper venue in an employment case is illogical and against the law. As Boxhorfer held, the nature of the cause of action is to be a consideration for venue purposes. Defendants imply that venue is improper in St. Clair County because Plaintiff's defamation claim against defendant Trina Castee has more of a connection to Jackson County in as much as the defamatory statements allegedly made in Jackson County. However, as I indicated, no statute or case law requires Plaintiff to substantiate transactional venue for each count of her amended complaint, or for that matter, each defendant that she sued. And as I mentioned earlier, the case law is actually to the contrary, and I particularly cited the Alsop v. Sycamore Municipal Hospital case, which I've already talked about. But I would mention that the Alsop Court made the point that in that case, that there would be questions as to what portion of the injuries were attributable to each defendant, and so that was another reason for it rejecting Sycamore Hospital's argument to transfer the case. Unlike the previous case that was before you, this is not a form of nonconvenience case. Defendant's motion alleges that Plaintiff selected an improper venue. Defendants have the burden to prove that Plaintiff's selection of venue was, in fact, improper. On review of a motion to transfer venue, this Court's determination is not whether the facts alleged by the Plaintiff are true, but whether the trial court correctly determined the legal effect of those facts. This is a legal question and thus is subject to de novo review. Defendant hired Plaintiff to work in St. Clair County and then terminated her from working in St. Clair County. This is not a cause of action that has some remote connection to St. Clair County. For the reasons given, the Circuit Court misapplied the law to the facts of this case. Accordingly, under this Court's de novo review, this Court should reverse the Circuit Court's decision and send this case back to St. Clair County where venue is proper. Thank you. Thank you, Counsel. Counsel. Thank you. May it please the Court. Counsel. Your Honor. My name is Troy Bozarth. I represent Eli Lilly in this matter. Defendant Lori Trentacosti is represented by Mr. Chris Bailey. We decided that having one arguer as opposed to two saying the same thing would be better for both Counsel and Plaintiff. Counsel and the panel, so I drew the straw. Your Honor, this is a classic example of why venue matters. We have parties here that have no connection to St. Clair County. We have an Indiana company that was sued by a Missouri resident. It's being sued in St. Clair County. The citizens of St. Clair County are once again going to be putting the bill for jury trial and deciding a case that really has no connection to their county. Does that have anything to do with our analysis? What's that? Does that have anything to do with our analysis? Well, what it has to do with It's not a form of non-convenience case. It's not a form of non-convenience case. But venue matters, I think is the point, Your Honor. So if the Plaintiff alleges four separate causes of action, and if any one of those causes of action sprang into existence in St. Clair County, St. Clair County is a proper venue. Do you agree with that? I do. Absolutely. In this case, that didn't happen. And I'm going to tell you why. When we started this case, and it's interesting to note that Ms. Trent-Acosti, the She is the only reason why we are in state court. Because she's the reason why the case is not in the Southern District of Illinois. Yet, being the forum defendant, she is now going to be traveling two and a half hours to St. Clair County if this court reverses. And this is not a forum motion. But the purpose of a venue statute, according to the Illinois Supreme Court, is to ensure that venue is convenient to defendants or witnesses. That parallels the residency prong under 101 and the transactional prong. That's what that means. It has to be convenient, and that's the purpose of it. But we don't do any analysis about convenience, do we? No. There's no question here about which is a better venue. This is an either-or situation. Either there's a venue in St. Clair County, or there's not. If there is a venue in St. Clair County, they get to stay there. That's correct. When you're looking at this analysis, it's clear that the venue statute is intended to protect defendants against arbitrary decisions on venue by the plaintiff. Exactly what Your Honor just said. The Supreme Court in the Buckley case said that venue is an important statutory privilege, and defendants can insist on the right venue. Also, Stanbaugh says that the statute is to be liberally construed in order to affect rather than defeat defendants. So under that background of facts, or case law, the facts are to be analyzed. When you look at this case, in the history of this case, plaintiff's complaint on file right now in the record at SR 2 doesn't really say anything about transactional venue. Her original complaint, actually the complaint, Your Honor, is the amended complaint, sought to fix venue under the resident's request. Each count stated, with the exception of count 2, which is against Ms. Trentacosti, stated that Lily was doing business in St. Clair County. Incorrectly, but that's what it stated. That's why they thought they were in St. Clair County. That was contained in every count at SR 2, 7, 10, 12, and 20. The plaintiff's complaint in our motion to transfer venue was shown to be incorrect. That affidavit of the Lily employee, John Abbott, at SR 34 and 35 showed that, in fact, for venue purposes and the standards that we have to apply, Lily was not doing business in St. Clair County. So therefore, plaintiff didn't dispute that and they didn't dispute that here today. What they did instead was pivot and say, well, this is a transactional case. So the first time we got, and this I think is telling, though the judge still analyzed it, it took a year to get a response to our motion to transfer venue. Seven days before the argument, we give Ms. Turaga's affidavit, which spells out all of these things that she believes took place in St. Clair County. Now, the trial court did not find it was too late, but frankly found that it was too little. The court allowed her, and contrary to the plaintiff's statement in her brief, the court did not ignore her arguments. The court let her brief the motion a year after it was filed. The court heard argument on it. The court let her make whatever arguments she wished to make. Just because the court did not agree with the arguments does not mean that they were ignored. So it does a bit of a disservice to the court below as to what actually happened. All of her arguments that she made here today will be made to the court below. What the court did was look at the facts of this case and all of the allegations and claims that she made. Ms. Turaga is a Missouri resident. She was employed by Lilly from 2000 to 2011, almost 11 years, and Eli Lilly, licensed to do business in Illinois with a registered office in Cook County, is an Indiana company. She worked in Southern Illinois. Part of that was in St. Clair County, but certainly not all of it. Geographically, a small portion of it, from a business standpoint, she may have had more contacts in St. Clair than the rest of the more rural Southern counties. Does the record sort that out in any way? I mean, common sense tells us she had more doctors to see in St. Clair County than in Randolph County, let's say. But is there anything in the record that... I think there are two things in the record that talk to that, Your Honor. One is the affidavit of Chris Farr, who was Ms. Turaga's immediate supervisor, which I believe starts at SR 26, and he talks about the geography. The other thing that is in the record, and I believe these are the only two things that are factually in the record, is that Ms. Turaga says that most of her territory, and I believe it's been characterized by counsel in the brief that that meant, most from a business standpoint as opposed to geography. So I think those are the two things that are in the record on that. So when you look at where she worked, you also have to look at the facts regarding her relationship with Mr. Farr. Mr. Farr was her immediate supervisor, and the gentleman that she says did the discriminating against her. Mr. Farr is a Missouri resident as well. His territory in his supervisory capacities, Illinois, Missouri, and I believe Arkansas departs there. His affidavit starts at 26, and he says that because both him and Ms. Turaga were Missouri citizens, most of their interactions were in Missouri. At paragraph 4 of his affidavit, he talks about sales meetings, interim reviews, evaluations, sales coaching, and ultimately termination on Missouri. All of her work interactions with Ms. Trincicosky, Jackson County. On November 4, 2011, an anonymous report regarding Ms. Turaga came in to the Eli Lilly Ethics Hotline. That hotline is manned in Portland, Oregon, and was, we believe now, was made from southern Illinois, not St. Clair County, where that call emanated from. That misconduct was investigated, and Turaga was ultimately terminated because of the findings from that investigation. She claims that the termination was improperly motivated. So when you look at this case and that factual background, you have to look at what termination emanated from it. Why did that happen? Counselor, to refresh my memory, who was the representative of your client that sat in on the phone conference that took place in St. Clair County with the plaintiff? Yeah. His name was Chris Farr. He was her immediate supervisor, and he was in St. Clair County. Lori Morris, I believe her first name is Lori, was in Indianapolis. Correct. So when you look at that situation and where it emanated from, where the termination really sprung into existence, we're looking at outside of St. Clair County. Your opposing counsel says that your argument is focused on your defense and the basis of your termination. Her argument is based on her cause of action. And really, from Vandy's standpoint, it should be based on what the cause of action is, shouldn't it? That's exactly what she says about my argument, but that's not really what my argument is, and that's what I explained to the trial court below. When you look at the totality of this situation, and she's right, you have to have a connection to St. Clair County, and there's no doubt that she did do some work in St. Clair County. We have basically two things that she points to, two things in total. A phone call that happened already during the investigation where she, Ms. Jurata, allegedly said, well, there's other people doing these things too, i.e. whistleblower. I've blown the whistle. So we have a phone call between Indiana and Mr. Farr and Ms. Jurata in a conference room in St. Clair County. So what we're going to have to do, if you think about this, the people who are going to talk about this and the witnesses who are going to be the witnesses to this conduct that happened in St. Clair County, we're going to have to go to Missouri to take their deposition because the only reason why they were in St. Clair County for that particular phone call was happenstance. It could have just as easily happened in Missouri or any of the other counties in which she worked. There's nothing peculiar about St. Clair County that caused that phone call where, frankly, everything that she talks about, her blowing the whistle, where she was told not to do certain things with another person who may have been having a claim against my client, all of those things happened during one phone call where she was already under investigation. And that's the fact that it was in St. Clair County and has nothing to do with her employment. It was just the place where they met for that day. The other thing that she talks about is that she was treated differently because Mr. Farr didn't ride with her on sales calls. Rather, he followed her on sales calls. Mr. Farr has a territory that spans several states. Because she can point to one other person in St. Clair County where she can say, well, I have to go and talk to this other employee and find out what happened to her when Mr. Farr went with her on sales calls. It doesn't tell us anything about why this cause of action sprung into existence because we can talk about what Mr. Farr did with the Missouri sales people, with the Arkansas sales people, and with everyone else in every other county in Southern Illinois. That's the reason why. Those two things are what the trial court felt were not significant enough to meet the burden of where this actually sprang into existence. That's the problem. There are things when you go back after the fact and say, well, I was employed in St. Clair County, therefore an employment case has to be able to be filed in St. Clair County. That doesn't make any sense. You can't file an employment case every place in your territory. The law in Illinois, you have to file the cause of action where it sprung into existence. It sprung into existence in several places in our estimation. One, where Lori Trentzikoski called the ethics hotline and made her statements about Ms. Tirada, whether they were defamatory or not, we don't believe they were, or whether they were or not, they happened in Jackson County. That's where all of her interaction with Ms. Trentzikoski occurred in Jackson County. That's where the investigation sprang from. So when you look at the case like Boxdorfer and we have a situation where there was a fraud that was alleged, there was actually, Boxdorfer, you had a sale in Madison County, though it wasn't directly from the defendant, it was from an agent or a dealer of the defendant. We had allegedly the fraud occurring in Madison County, because that's where the folks were that were deceived, all the plaintiffs lived in Madison County, and the damage actually occurred in Madison County. What the court in Boxdorfer did was look directly at where the conduct that was causing the action to occur, the fraud, happened. They said the fraud happened outside of Madison County because it was the conduct that gave rise to the fraud. It's where the decisions were made, it's where the fraud emanated from. It was outside of Madison County. For those reasons, and the court said that it didn't sprang into existence from there, even though the damage occurred there. Boxdorfer is now the law of the 5th District and being followed throughout the state. I know Justice Goldenherz was on that panel and had a  it's happened a number of times. To give you some comfort as to why this should be affirmed, this case is even stronger, much stronger than that case. In Boxdorfer, as you'll remember, the plaintiffs were from Madison County. They allegedly purchased their properties in Madison County and that the damage occurred in Madison County. In this case, it's not even close. We have a Missouri resident who stopped by a hotel conference room to have a conference call with Indiana where all of these things happened. Frankly, the stuff that she says happened to her could have happened anywhere. It's not what caused the action to spring into existence. It is the conduct. You keep talking about who resided in Missouri and so forth, but this case isn't about residency at all. Why does residency have anything to do with whether the transactional problem has been made? It isn't about residency once the plaintiff filed their response seven days before the argument. It was all about residency before that, but I agree with you. What's important and why it's important is because they both lived in the St. Louis area and all of their contact happened in Missouri. That's why it's important. The fact that they had this phone call, one phone call and that there were sales rides that could have been filed in St. Clair County versus other counties as well just isn't enough. That's what trial court found to meet the burden of causing this to spring into existence. Unless your honors have any other questions? I don't believe we do. Thank you, counsel. Excuse me. Counsel? I just want to briefly touch on a couple of things that counsel mentioned. First of all... Can I ask you a question first? Sure. You're not claiming under the residency problem, right? This case is only about transactional. That's all that was argued. I had actually argued to the trial court that I needed to perform some discovery on the residency issue if we were going to go down that road and the trial court did not grant me time to do discovery on the residency issue. That's right. In the alternative here, you're asking for a remand for discovery. Right. Counsel had mentioned that the events in this case could have happened anywhere, which is an interesting argument because they didn't happen anywhere. That conference call that was mentioned took place in St. Clair County. One of the reasons they were in St. Clair County is that was part of my client's territory. The court can't ignore the fact that that important phone call did happen in St. Clair County. During that phone call, she complained about discrimination. She reported improper acts by other employees. Her actual acts that she alleged she was retaliated for occurred during that phone call. It's not an inconsequential phone call and it's not inconsequential that it happened in St. Clair County. The Bobsdorfer case is kind of an interesting case on the facts and it's not directly analogous to this case because it's not an appointment case, but it's interesting in the sense of defendant's argument because the court ultimately held that the case couldn't be in Madison County because the court held that the fraud occurred outside of Madison County, but that case, the plaintiffs wouldn't have their case in that particular, in Bobsdorfer, unless they had purchased the vehicles and they purchased the vehicles in Madison County. Now, the court said, well, the fraud actually took place outside of Madison County and held something different, but defendant's argument in focusing on the termination has been, look, plaintiff wouldn't have a case unless she was terminated, so you really need to focus on the termination. But that's the same, that's actually the argument that the court re-judged in Bobsdorfer, that the last act has to be the controlling factor. So I don't think the facts in Bobsdorfer actually supports defendant's argument, rather I think it in great respect supports plaintiff's argument. And then I wanted to mention that plaintiff's affidavit specifically states, quote, the majority of my sales calls took place in St. Clair County since that was the largest part of my territory, unquote. So plaintiff has in her affidavit that that was where the majority of her sales calls happened, that that was the largest part of her territory. When defendants filed their brief in this case, was when they made the argument that well, geographically, no one county is the largest part of her territory, then my reply, that's the first time I had heard that argument, so there was no reply prior to that. In my reply brief I note that plaintiff was not talking about geographic size because obviously geographic size is what it is, that her argument was the size of the population of healthcare workers is larger in that territory and so that was where the majority of her sales calls were naturally because that's where a larger number of healthcare workers are. But she does say that the majority of her sales calls took place in St. Clair County and there is no rebuttal affidavit by the defendants that says otherwise to that. And then I would just add that there's no law, and defendant hasn't cited any, that says that termination for one element that she has to prove is more important than any other element. The court would never do a jury tell a jury one element of a plaintiff's case is more important than any other case. So no element, and there's no law that says for venue purposes that the court is supposed to focus on one or the other element. So even though the defendant wants to focus on termination only, there's no case law that says that in effect Fox-Dorfer says otherwise. I don't know if there are any other questions. I don't believe you. We appreciate the briefs and evidence and arguments of all counsel. We'll take the case under advisement. The court will be in a short process.